UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

EDWIN MANUEL MELECIO-HEREDIA,

    Defendant.

Criminal No. 11-562-01 (JAF)

## MEMORANDUM ORDER

**I.**

We have before us a motion to reconsider sentence, (Docket Nos. 58, 65), where the Defendant alleges that at the time of sentencing he had not received any indication by the court that an upward departure or variance sentence could be imposed. He cites Fed. R. Crim. P. 32(h) and the pre-Booker case of U.S. v. Mangone, 105 F.3d 29 (1st Cir. 1997), to the effect that no such notice was given.

The court sentenced the Defendant to 46 months on a PSI-calculated guideline range of 24 to 30 months, Base Offense Level 17, Criminal History Category I. The charge was the possession of a firearm by a prohibited person, a convicted felon.

The court crafted the 46-month sentence as a variance or non-guideline sentence which could also qualify for a USSG § 5k2.0 upward departure for facts not fully considered by the Sentencing Commission at the time the guidelines were approved, and also based on the fact that the case is by no means a heartland typical situation.

**II.**

Rule 32(h) does not state that the court must give notice of the possibility of a variance or non-guideline sentence. As a matter of fact, in this case, during the change-of-plea colloquy (Docket No. 63), the court quite clearly informed the Defendant that a number of factors in the case could influence the final sentence that the court would impose, such as using the statutory sentencing authority and not the advisory guidelines. (Docket No. 63, p. 13, ll. 10-15; p. 14, ll. 2-5.)

At page 15 of the transcript (Docket No. 63, p. 15, ll. 15-20), the court admonished the Defendant once again about the possibility of a non-guideline, statutory-type of sentence:

> Normally, in this kind of case counsel knows that I would like to be placed in a position to decide whether I should do a sentencing guideline in this case or do something different. Factors to consider are his previous criminal record, the nature of the firearm, and the nature of the high capacity magazine naturally. Okay?[1]

At the sentencing hearing, with no objection on the part of defense counsel or any argument based on Fed. R. Crim. P. 32(h), the court clearly articulated the reasons for the imposition of a non-guideline sentence. (Docket No. 64.)

---

[1] Previous convictions are for felony receipt of stolen property and felony aggravated damages, with a short probation sentence. Other criminal charges include theft of vehicle parts, two instances, both dismissed in the "interest of justice" under P.R. Rule of Criminal Procedure 247.

The prevailing Puerto Rico state-court problem of Rule 64 and 247 dismissals creates a challenge for federal district judges at the time of assessing criminal history. The majority of presentence reports contain an alarming lack of disposition of serious criminal cases—dismissals in the interest of justice or on speedy trial violations, many without prejudice. In more than 90% of those cases, that is the end of the story. This reminds us of the famous "guilty-filed" dispositions treated in United States v. Curet, 670 F.3d 296 (1st Cir. 2012), and the impact all these unusual dispositions may have in criminal history assessment.

We find that the sentence imposed as a non-guideline, variance-type sentence finds no impediment in Fed. R. Crim. P. 32(h). Rule 32(h) does not require notice in advance of a court's imposition of a variance from the guideline range. Irizarry v. United States, 553 U.S. 708, 716 (2008). See also United States v. Cole, 412 F.App'x 320, 321 (Rule 32(h) "does not require notice in advance of a court's imposition of a variance from the guideline range").

Here, we have a jurisdiction that is, for all practical purposes, a narco-state as it pertains to drugs and violence. The First Circuit has recognized the troublesome picture in Puerto Rico, where crime far exceeds the known limits in the mainland. It suffices to cite Judge Boudin in Watchtower Bible and Tract Soc'y of New York, Inc. v. Sagardía de Jesús, 634 F.3d 3, 6. The court expressed the following:

> The Controlled Access Law—adopted in 1987 and amended in 1988, 1992, 1997, and 1998—was prompted by and adopted against a background of endemic violent crime. Puerto Rico, with a median household income only about one-third of the U.S. national average and less than half of every other state, has a homicide rate quadruple the U.S. national rate and more than double that of virtually every state. It is a major drug transit point, and drug dealing has led in a number of cases to corruption among local police.

Violent crimes and murders are occurring even in broad daylight in any place of the metropolitan areas of Puerto Rico, including public-congested highways and shopping centers. Firearms are present everywhere. The violent murder rate last year surpassed 1,300 murders, and this year we are about to meet that record level as well.

Among the reasons advanced for the 46-month sentence was the complex criminal past of the Defendant, including convictions and arrests, and the type of firearm involved—a fully automatic pistol. We also considered the ammunition magazines carried by the Defendant and the nature of one of the magazines.[2]

The picture presented by this case is a reminder of how dangerous our streets and public places are in Puerto Rico, where human life seems to have lost all value. We invite the Court of Appeals to review the sentencing transcript. The undersigned lives in this society and feels the pressures of criminality just like any other citizen. We are aware of the fact that anyone in this jurisdiction leaves for work in the morning not knowing if he or she is going to make it home alive after a day's work journey.

Since we are appending the Sentencing and Change-of-Plea transcripts to this Memorandum Order (Docket Nos. 64, 63), we will not repeat our statements at sentencing, but it is evidently clear that a 46-month variance sentence is totally supported by this record and by the state of siege that Puerto Rico society lives in at the hands of armed criminals. Going for a minute to USSG § 5K2.0, and borrowing from it for a variance sentence, there exist in this case and in this district aggravating circumstances of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines applicable to this case. To find to the contrary would be to stand blind before the

---

[2] High-capacity magazines have called the attention of the Sentencing Commission. See USSG § 5K2.17. Of course, we did not use that section of the guidelines to base our variance, but, indeed, we can consider that event in a variance setting. High-capacity magazines imply the intention of having a firearm capable of extended and repeated firing. If the firearm is automatic, it is not difficult to extrapolate as to the fatal consequences of the use of the weapon.

deteriorated quality of life and dangerousness that Puerto Rico is submerged in these days. That, we will not do.

### III.

Lastly, we address a point not raised here: Whether Puerto Rico's high firearm-violence crime rate can be considered in imposing a statutory sentence for firearms violations. The point has been decided by the Court of Appeals for the First Circuit in United States v. Politano, where the court decided:

> Post-Booker, it is now apparent that the district court has the discretion to take into account all of the circumstances under which Politano committed the offense, including the particular community in which the offense arose. In considering the characteristics of that community, the district court has the authority to conclude that the impact of this particular offense is more serious than that reflected by the Sentencing Commission. Indeed, the § 3553(a) factors expressly provide for consideration of general deterrence: section 3663(a)(2)(B) states that "[t]he court, in determining the particular sentence to be imposed, shall consider the need for the sentence imposed to afford adequate deterrence to criminal conduct." General deterrence is about preventing criminal behavior by the population at large and, therefore, incorporates some consideration of persons beyond the defendant. See U.S.S.C. ch. 4, pt. A, introductory cmt. ("General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence."(emphasis added)). In this case, the district court expressly considered the ways in which Politano's firearms offense was more serious and harmful within this specific community. Cf. United States v. Cavera, 505 F.3d 216, 223 (2d Cir. 2007) (vacating the sentence because "[t]he district court does not purport to establish that Cavera's crime was itself more harmful, but only that his crime falls within a category of offenses (gun crimes in densely populated areas) that the district court viewed as more serious, on average, than gun crimes in less urban communities"). Therefore, to the extent the district court's explanation is grounded in "case specific

considerations," we accord a "respectful deference" to its "fact-intensive sentencing decisions." Martin, 520 F.3d at 96-97, 2008 WL 748104, at *4, 8-9.

522 F.3d 69, 74 (1st Cir. 2008).

## IV.

To conclude, the motion to reconsider sentence is **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 25th day of June, 2012.

                                      s/José Antonio Fusté
                                      JOSE ANTONIO FUSTE
                                      United States District Judge